(No. 5347— )

THOMAS PERKINS and BERTHA VAUGHN, Claimants, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed October 10, 1968.*

MEYER AND MEYER, Attorneys for Claimants.

WILLIAM G. CLARK, Attorney General; LEE D. MARTIN, Assistant Attorney General, for Respondent.

DOVE, J.

This cause of action arises out of a single-car accident on August 9, 1966 on U. S. Route No. 460 near the Cahokia Downs Race Track in St. Clair County, Illinois. The complaint consists of two counts, one on behalf of Thomas Perkins, the driver of the car, and one on behalf of his passenger, Bertha Vaughn. The negligence

alleged consists of failure to give proper and adequate warning of the presence of barricades at the construction site. Each count seeks Ten Thousand Dollars ($10,-000.00) for personal injuries, medical and hospital expenses.

Both claimants were employees of Jefferson Barracks Veterans Administration Hospital in St. Louis, Missouri, and at 8:30 A.M. on the morning of August 9, 1966 had gone to Centralia, Illinois, taking an automobile owned by Bertha Vaughn there to be repaired. Centralia was also the home of the mother of claimant, Thomas Perkins. They stayed in his mother's home visiting her until around 8:00 P.M. when they left Centralia.

At the time of the accident there was repair work being carried out on Route No. 460. The point at issue is whether or not there was proper and sufficient warning of the presence of the barricades to the traveling public. Both claimants testified that there were no signs flashing. Claimant, Thomas Perkins, testified that he came upon them suddenly, and there were "a lot of barricades", but he didn't have any idea how many. He did not strike the barricade, but was forced to turn off the highway to avoid striking it, rolling his car over. The force of the impact dazed him, rendering him temporarily unconscious, and he testified further that a Volkswagen is hard to handle once control is lost, and when he swerved to avoid hitting the barricade it started to roll over and he tried to bring it back straight. This happened at 10:30 P.M. in the evening, and claimant Perkins had his headlights on. Bertha Vaughn supported Mr. Perkins in his testimony. They both sustained injuries, and were treated by Dr. Weeks who also testified as to the injuries.

The first witness testifying for respondent was Charles Reynolds, a highway construction foreman for the day labor employed by respondent, having been employed by respondent for fourteen years. He testified that construction on Route No. 460 had been taking place about five weeks prior to August 9, 1966, and consisted of repair work of expansion joints at each end of a bridge, that there were barricades all along the area, which would have been all along the lane nearest the center median at the east end of the bridge. There were nine barricades before the bridge was reached, and on the bridge itself five barricades. These were fence barricades made of two by sixes, twelve feet long, with flasher lights fastened on the two by six timbers. The flasher lights along the top of the barricade and the end barricade had eleven flasher lights, the one after that three, the third one two, and the next one three, following that sequence. In diameter the flasher lights were eight inches with a six and one-half volt battery. He testified further that these were the regular standard flashing lights used for construction work, and that, as a driver approached the construction area, he would have encountered a sign advising of the road construction ahead about 1200 feet from the barricaded area. This is a four by four sign, white with black two-inch lettering with a flashing signal. The next sign claimant would have encountered was one advising that the left lane, the one nearest the center median, was closed. This was a four by four sign, yellow with black letters and with a flashing signal. Reynolds stated further that a third sign would have been encountered by claimant advising of a single lane ahead. This sign was the same size, not reflectorized, but with a flashing light on it. There was a ''35 m.p.h.'' sign under each of the three

signs described. The signs were 400 feet apart, and the barricades were eighty feet apart. Route No. 460 consisted of four lanes, two lanes each for east and westbound traffic. Reynolds further stated that, when he left the construction site at 5:30 P.M. on August 9, 1966, the signs and barricades were in place, and the flashing lights were working. Reynolds' testimony was supported by Lowell Hewlett, a maintenance laborer for respondent. He also left the construction site at approximately 5:30 P.M.

At the time of the accident James Sinnet was employed as a filling station attendant on Route No. 157, which is a highway running generally north and south under the bridge, and was able to see from the filling station the construction area and the scene of the accident. He testified that on the night of the accident and at the time of the accident the lights in the barricades were clearly visible from his station. He was on his way back into the station when he heard the crash, and he looked in the direction of the construction area, and the lights were clearly visible to him. He did not see any cars after he heard the crash, but someone came to the station looking for flares who thought there was a car over the embankment. He did not go to the scene of the accident.

Respondent, State of Illinois, is not an insurer of the safety of persons using its highways. It is only required to maintain adequate signs warning of the particular danger, *Grant* vs. *State of Illinois*, 21 C.C.R. 563; *Williams* vs. *State of Illinois*, 21 C.C.R. 597; *Bloom* vs. *State of Illinois*, 22 C.C.R. 582. In the case of *Williams* vs. *State of Illinois*, 21 C.C.R. 603, the Court in denying the claim said:

"It is difficult for us to understand why they did not see any signs of the construction work being done in and around the approach to the bridge for a reasonable distance, which should have been visible to them in time to bring their car under control, and *thus enabled them to avoid striking the hole in the pavement.* Furthermore, in deciding the question of contributory negligence, whether one of law or fact, we cannot ignore the Departmental Report as to the extensiveness of the construction of said highway and approaches to the bridges; * * *" (Emphasis added)

"It is, therefore, our opinion that if claimants ignored the signs of warning, did not follow the detour as posted, and drove on the pavement, which had not cured, and in the vicinity where the approach to the bridge was being repaired, they did so at their peril, and assumed all the risks and hazards incident thereto. The record is silent as to anything being said, or any warning or protest being offered by Inez Williams who was riding as a passenger with her husband. Furthermore, we are of the opinion that, as to her injuries, and the injuries and property damage suffered by her husband, Erwin Williams, it was his negligence, which was the proximate cause of their personal injuries and property damage."

From the evidence it is clear that the accident resulted solely from the negligence of claimant, Thomas Perkins. There is nothing in the record that would indicate that the passenger, Bertha Vaughn, said anything or offered any protest in the way the car was being driven.

The claims of Thomas Perkins and Bertha Vaughn are, therefore, denied.